**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMY WEBER, <br><br> Plaintiff, <br><br> v. <br><br> FRANCES A. MCGROGAN, et al., <br><br> Defendants. | Civil Action No.: 14-7340 (CCC) (JBC) <br><br> **OPINION** |

**CECCHI, District Judge.**

**I.     INTRODUCTION**

This matter comes before the Court upon the objections of pro se Plaintiff Amy Weber ("Plaintiff") to the Report and Recommendation [ECF No. 96] of Magistrate Judge James B. Clark, III, on the June 1, 2015 Order to Show Cause, issued sua sponte, directing Plaintiff to show cause as to why her case should not be dismissed pursuant to the Rooker-Feldman doctrine. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court adopts Judge Clark's Report and Recommendation and dismisses Plaintiff's Complaint without prejudice for lack of subject matter jurisdiction.

**II.    BACKGROUND**[1]

On November 24, 2014, Plaintiff filed a Complaint against approximately sixty Defendants, mostly employees of the Superior Court of New Jersey Bergen Vicinage Family Court

---

[1] Because Judge Clark's Report and Recommendation provides a detailed factual history of the events surrounding Plaintiff's state court action, this Opinion includes only an abbreviated version of that history.

1

("Family Court") and the New Jersey Division of Child Protection and Permanency ("CPP")[2], as well as various state and federal officials. See Complaint ("Compl."), ECF No. 1. Plaintiff alleges that Defendants violated her First and Fourteenth Amendment rights in connection with her child custody proceeding in Family Court. See id. Plaintiff also alleges therapist malpractice and fraud before the Family Court, in the case heard by Defendant Frances A. McGrogan, J.S.C. ("Judge McGrogan"). See generally, Compl.

Plaintiff and her ex-husband originally shared joint legal custody of their child, following their divorce in May 2008. See Report and Recommendation at 2. In July 2009, around the time that steps were taken to compel the marital residence's sale in accordance with the divorce settlement, Plaintiff began making allegations that her ex-husband had sexually abused their child. See Appellate Division Decision, ECF No. 76, at 4. Professionals from the CPP and Audrey Hepburn Children's House conducted a nearly two-year-long investigation into Plaintiff's allegations and ultimately recommended that the child be removed from Plaintiff's custody. See Report and Recommendation at 2. In April 2011, CPP ordered that Plaintiff's child be placed in the custody of his father, Plaintiffs ex-husband, and that Plaintiff's visits with the child be supervised. See id.

In 2011 and 2012, the Family Court held a series of fact-finding trials, after which Judge McGrogan concluded that Plaintiff's allegations of abuse by the ex-husband were unsupported but determined that "there is substantial credible evidence to support a finding that [Plaintiff] emotionally and psychologically harmed the child . . . ." Id. Judge McGrogan also ordered that Plaintiff's ex-husband retain custody, finding "it would be contrary to the child's welfare to remove him from his father's custody. If returned to his mother, he would again be placed at

---

[2]   The CPP was formerly known as the New Jersey Division of Youth and Family Services, or DYFS.

substantial risk of [psychological] harm." Id. Plaintiff appealed from the Family Court's judgment, and, on May 13, 2015, the Appellate Division affirmed. See ECF No. 76. Plaintiff, however, filed the Complaint in this action on November 24, 2014—before the Appellate Division had rendered its decision affirming the judgment.

Several defendants have since moved to dismiss the Complaint on the grounds that, inter alia, this Court lacks subject matter jurisdiction over the action under the Rooker-Feldman doctrine—which precludes federal courts from engaging in appellate review of state court judgments. See ECF Nos. 3, 5, 12, 18, 21, 27, 44, 49. Judge Clark issued an Order on June 1, 2015 directing Plaintiff to show cause as to why this matter should not be dismissed pursuant to the Rooker-Feldman doctrine. See ECF No. 78.

After receiving Plaintiff's submission on June 9, 2015 [ECF No. 84], Judge Clark issued a Report and Recommendation, recommending dismissal of Plaintiff's Complaint for lack of subject matter jurisdiction. See Report and Recommendation. Namely, Judge Clark found that all four factors of the Rooker-Feldman doctrine are satisfied in this case and that "it is of no moment that the judgment had not yet been addressed by the Appellate Division." Id. at 8. To the extent that Plaintiff may have had any other appellate recourse in state court, Judge Clark found that the abstention doctrine of Younger v. Harrison, 401 U.S. 37 (1971) would apply and result in dismissal of Plaintiff's Complaint. Id. at 8, n. 4. Judge Clark also noted that "courts within this District have repeatedly recognized that they lack subject matter jurisdiction to entertain claims which challenge adjudications made by state family courts." Id. at 5.

Plaintiff filed timely Objections to the Report and Recommendation, on June 30, 2015. See Plaintiff's Objections ("Obj."), ECF No. 98. Plaintiff first asserts that her pro se pleadings should not be held to the same standard as those of practicing attorneys. See Obj. at 1-2. Next,

Plaintiff contends that the Rooker-Feldman doctrine is inapplicable, because there was no final judgment in state court at the time Plaintiff filed this action, as her appeal had not yet been decided. See id. at 11-12. She also contends that, in any event, it is not the state court judgment that caused her injuries but rather the conduct of the defendants. See id. at 3-5. Separate from the Rooker-Feldman doctrine, Plaintiff appears to argue that the Younger abstention doctrine is inappropriate because it is a judicial construct—not created by statute or the U.S. Constitution. See id. at 14-15. As such, Plaintiff posits that the Younger abstention doctrine cannot supersede the Constitution, which would occur if her claims for the violation of her constitutional rights were dismissed. See id. at 15. Moreover, Plaintiff argues that the malpractice and fraud claims are independent claims, which were not addressed in any state court proceeding. See Obj. at 7.

## III. LEGAL STANDARD

When a Magistrate Judge addresses motions that are considered dispositive,[3] such as motions to dismiss, the Magistrate Judge submits a Report and Recommendation to the district court. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72; L. Civ. R. 72.1(a)(2). "Within 14 days . . . a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); L. Civ. R. 72.1(c)(2). The district court must make a de novo determination of those portions of the Magistrate Judge's Report and Recommendation to which a litigant has filed objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); L. Civ. R. 72.1(c)(2); see also State Farm Indem. v. Fornaro, 227 F. Supp. 2d 229, 231 (D.N.J. 2002). The district court may then "accept, reject or modify the recommended disposition . . . ." Fed. R. Civ.

---

[3] Although Judge Clark's Order to Show Cause was issued sua sponte, it pertained to a number of motions to dismiss filed by various Defendants. (See ECF No. 78.) This Court, therefore, "characterizes the Magistrate Judge's sua sponte decision to recommend dismissing this case as akin to action on a motion to dismiss, which is, of course, a dispositive motion." Joyce v. Cont'l Airlines, Inc., No. CIV.A. 09-02460, 2011 WL 2607110, at *1 (D.N.J. June 30, 2011).

P. 72(b)(3). Unlike an Opinion and Order issued by a Magistrate Judge on a non-dispositive matter, a Report and Recommendation does not have force of law unless and until the district court enters an order accepting or rejecting it. United Steelworkers of Am. v. N.J. Zinc CO., 828 F.2d 1001, 1005 (3d Cir. 1987).

## IV. DISCUSSION

Judge Clark's Report and Recommendation correctly concluded that this Court lacks subject matter jurisdiction over Plaintiff's claims. Accordingly, the Report and Recommendation is affirmed.

### A. Pro Se Litigants Are Bound By The Court's Jurisdictional Requirements

Although Plaintiff argues that her pro se pleadings are not held to the same standard as those of practicing attorneys, Judge Clark properly construed Plaintiff's Complaint and her submission in response to the Order to Show Cause. "A document filed pro se is 'to be liberally construed[.]'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). But, despite the leniency afforded them, pro se litigants are still bound by court orders, local rules, policies and procedures, and the Federal Rules of Civil Procedure. See N'jai v. Pittsburgh Bd. Pub. Educ., 2011 WL 2413339, at *13 (W.D. Pa. Apr. 13, 2011). Here, Judge Clark was not improperly impacted by the inartful nature of the pro se Plaintiff's filings. Similarly, while this Court also liberally construes Plaintiff's submissions—including her Objections—the Court must strictly adhere to the requirements for subject matter jurisdiction set forth by statute, the Federal Rules of Civil Procedure, and legal precedent.

### B. The Rooker-Feldman Doctrine Bars Plaintiff's Complaint

Having found that the four factors of the Rooker-Feldman doctrine are satisfied, Judge Clark's Report and Recommendation determined that Plaintiff's Complaint should be dismissed

for lack of subject matter jurisdiction. Now, after conducting a de novo review of the Report and Recommendation, in light of Plaintiff's challenges, this Court agrees that all four factors are met.

The Rooker-Feldman doctrine prevents federal courts from "review[ing] and revers[ing] unfavorable state-court judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005) (citing D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923)); see also Moncrief v. Chase Manhattan Mortg. Corp., 275 Fed. App'x 149, 152 (3d Cir. 2008) ("The Rooker-Feldman Doctrine embodies [the principle that] lower federal courts lack subject matter jurisdiction to engage in appellate review of state court determinations or to evaluate constitutional claims that are inextricably intertwined with the state court's decision in a judicial proceeding."); Judge v. Canada, 208 Fed. App'x 106, 107 (3d Cir. 2006) ("The Rooker-Feldman doctrine deprives a federal district court of jurisdiction to review directly or indirectly a state court adjudication."). The Supreme Court has made clear that the doctrine operates to prevent "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil, 544 U.S. at 284. The doctrine "bars a litigant's claim and divests the District Court of subject matter jurisdiction over those claims." Walker v. Horn, 385 F.3d 321, 329 (3d Cir. 2004) (internal quotations omitted).

In the Third Circuit, "there are four requirements that must be met for the Rooker-Feldman doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (internal

quotation marks omitted). The Third Circuit has stated that "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." Id.

### 1. Federal Plaintiff Lost in State Court

As the Report and Recommendation explains, "it cannot be disputed that Plaintiff lost at the state court level when Judge McGrogan ordered that the child remain with his father and not be placed back in his mother's custody." See Report and Recommendation at 8. Moreover, Plaintiff's appeal of Judge McGrogan's decision to the Appellate Division demonstrates that she recognized that she had lost in the Family Court. Plaintiff subsequently lost at the Appellate Division as well, because the Appellate Division affirmed Judge McGrogan's decision. See ECF No. 76.

Although Plaintiff objects that "there is not a final judgment terminating her parental rights[,]" (Obj. at 11.), the Court finds no legal support for the proposition that there be an affirmed, final judgment terminating parental rights for a Plaintiff to have "lost" in state court. Nonetheless, this case does have such a judgment, insofar as the Appellate Division has since affirmed the transfer of custody judgment, directing Plaintiff to obtain psychiatric treatment, and awarding her ex-husband attorney's fees. See ECF No. 76. Moreover, the temporal question surrounding Plaintiff's state court appeal—which was pending at the time Plaintiff filed this action—is more properly analyzed under the third Rooker-Feldman factor, which addresses when a state court judgment has been rendered before the filing of a complaint in the federal district court. Accordingly, the Court agrees with Judge Clark's Report and Recommendation that the first Rooker-Feldman requirement is satisfied.

### 2. Plaintiff Complains Of Injuries Caused By The State-Court Judgments

Next, the Report and Recommendation found that the second requirement was met—thus,

explicitly rejecting Plaintiff's argument that her Complaint was based not on injuries caused by the state court judgment but rather by the actions and inactions of the Defendants in violation of her constitutional rights. See Report and Recommendation at 8-9. Plaintiff's Objections, specifically, Point I ("Injury Caused By Adversary's Conduct") and Point II ("Independent Claims") are directed to this issue. See Obj. at 2-10.

First, Plaintiff argues that her injuries were caused by her adversaries' conduct—rather than by the state court judgment. See Obj. at 2-4. However, the allegations in Plaintiff's Complaint belie her argument that she is not seeking redress for injury from the state court judgment. In fact, Count I of her Complaint alleges: "Defendants . . . interrupted and impaired the familial rights of Plaintiff by removing [the child] from his mother's custody on April 11, 2011 and continued therefrom to impair their relationship with ex parte and other baseless orders to the point of completely denying access between the Plaintiff." Compl. ¶ 166. Similarly, the alleged injury in Count II is the violation of Plaintiff's First Amendment rights when Plaintiff lost custody over her child. See Compl. ¶ 184.

Second, Plaintiff argues that her Complaint is directed to an injury she suffered out of court for which she failed to get relief from the state court. See Obj. at 4-10. Thus, Plaintiff appears to argue that Count III, her claim for "Therapist Malpractice and Fraud," is an entirely independent claim that cannot be barred by the Rooker-Feldman doctrine. See generally Compl. ¶¶ 187-321. Plaintiff's Count III, however, is based on allegations that could have been raised in her state court appellate proceedings, as, according to Plaintiff, the alleged conduct in Count III resulted in the state court judgment ordering termination of her parental rights.

In Severino v. Div. of Youth & Family Servs., No. CIV.A. 11-3767 MLC, 2011 WL 5526116, at *1 (D.N.J. Nov. 14, 2011), the plaintiff alleged that the defendants conspired to violate

his constitutional rights and deprive him of parental rights, by bringing an investigation against him for child abuse and instituting a state court proceeding. Despite these allegations of out-of-court wrongdoing, the court nevertheless noted that the plaintiff "is attempting to []void orders in the State Proceeding. The proper way to do so is to seek review through the state appellate process, and then seek certiorari directly to the United States Supreme Court." See id. Thus, the court in Severino dismissed the Plaintiff's claims on the basis of the Rooker-Feldman doctrine.

Similarly, in Reed v. New Jersey Div. of Youth & Family Servs., No. CIV.A. 09-3765-NLH, 2012 WL 1224418, at *4 (D.N.J. Apr. 10, 2012), a case to which the Report and Recommendation cites, the plaintiffs argued that the violations of their constitutional rights were the result of the defendants' conduct "prior to the entry of any state court judgment removing their child from their care." The court in Reed, however, noted that "[a]lthough plaintiffs state that they seek damages as a result of the defendants' actions prior to the entry of the state court judgment, defendants' actions are 'inextricably intertwined' with claims that were 'actually litigated' by the Family Part." Id.

This Court finds, in agreement with the Report and Recommendation, that Plaintiff's alleged injuries were caused by "conduct occurring prior to the state court action, considered by Judge McGrogan in his analysis of same, and the action subsequently taken to enforce his judgment." See Report and Recommendation at 8. For example, Plaintiff notes that a certain doctor "diagnosed [Plaintiff] as delusional in an interview that [the doctor] testified about during the fact-finding trial." Compl. ¶ 196 (emphasis added). She complains that Judge McGrogan "agreed to [terminate Plaintiff's] visitation with [her child] based on [another doctor's] false report." Compl. ¶ 208. From this and other allegations in Plaintiff's Complaint, it is apparent that Plaintiff's claimed aggrievement is, indeed, from the state court judgment, and her allegations of

fraud and malpractice are "inextricably intertwined" with the child custody and abuse claims that were litigated before Judge McGrogan. Accordingly, the second Rooker-Feldman factor has been met.

### 3. State Court Judgments Were Rendered Before The Federal Suit Was Filed

As noted above, the third Rooker-Feldman factor requires that the state court "judgments were rendered before the federal suit was filed . . . ." Great W. Mining & Mineral Co., 615 F.3d at 166. Plaintiff contends that this requirement is not met because she had a state court appeal pending at the time that she filed this federal suit.[4] See Obj. at 22-23. It is true that the Third Circuit has not addressed this issue of whether any pending appeals must be exhausted before the state court judgment is considered "rendered". See Daniels v. Cynkin, 34 F. Supp. 3d 433, 439 (D.N.J. 2014) aff'd, 597 Fed. App'x 704 (3d Cir. 2015) ("The Third Circuit has not yet ruled on the question of when state court proceedings have ended for Rooker–Feldman purposes . . . .").

In this district, one court has narrowly held that "[w]hen there has been a final state court judgment and when that final judgment has been appealed twice and when both appeals have been denied, the filing of a third appeal does not preclude the Court from applying the Rooker-Feldman doctrine." Id. at 440. Courts in other jurisdictions appear split on this issue, with some finding that the Rooker-Feldman doctrine is inapplicable unless all state proceedings, including appeals, have ended before the federal action is filed,[5] and others applying Rooker-Feldman "as long as the

---

[4] Since filing her Objections, Plaintiff has provided a letter to the Court stating that she is now aware that there are no further appeals pending in state court and that the "Supreme Court failed in mailing documents stating the case was denied . . . ." See Letter from Plaintiff dated May 3, 2016, ECF No. 110.

[5] See, e.g., Nicholson v. Shafe, 558 F.3d 1266, 1275-76 (11th Cir. 2009); Guttman v. G.T.S. Khalsa, 446 F.3d 1027, 1032 (10th Cir. 2006); Domheim v. Sholes, 430 F.3d 919, 923-24 (8th Cir. 2005); Federacion de Maestros de P.R. v. Junta De Relaciones Del Trabajo de P.R., 410 F.3d 17, 27 & n.3 (1st Cir. 2005).

federal action seeks review of a previous state court judgment, regardless of whether that judgment is being appealed in the state courts when the federal case begins." Caldwell v. Gutman, Mintz, Baker, & Sonnenfeldt. P.C., 701 F. Supp. 2d 340, 346-47 (E.D.N.Y. 2010) (citing Schuh v. Druckman & Sinel, L.L.P., No. 07 Civ. 366(LAK)(GWG), 2008 WL 542504, at *5 (S.D.N.Y. Feb. 29, 2008); Lomnicki v. Cardinal McCloskey Servs., No. 04–CV–4548 (KMK), 2007 WL 2176059, at *6 n.11 (S.D.N.Y. July 26, 2007); Melnitzky v. HSBC Bank USA, 06 Civ. 13526(JGK), 2007 WL 1159639, at *8 (S.D.N.Y. Apr. 17, 2007); Bush v. Danziger, No. 06 Civ. 5529(PKC), 2006 WL 3019572, at *6 (S.D.N.Y. Oct. 23, 2006); Galtieri v. Kelly, 441 F. Supp. 2d 447, 458 n.9 (E.D.N.Y. 2006); Field Auto City, Inc. v. GMC, 476 F. Supp. 2d 545, 553 (E.D.Va. 2007)).

The third Rooker-Feldman factor was met here, where Plaintiff had a judgment against her from the Family Court at the time she filed her Complaint in the federal district court. Indeed, treating a state court judgment as final, regardless of whether the state court appeals have been determined, is more consistent with the overall purpose of the Rooker-Feldman doctrine: preventing state court losers from challenging their losses in federal court. See Exxon Mobil, 544 U.S. 280. As the Caldwell court noted:

> This purpose would be undermined if the doctrine is inapplicable simply because a litigant happens to be seeking state appellate review of a state-court judgment, while also seeking federal district court review of that judgment. Regardless of the status of any state court appeals, the litigant is still seeking federal review of a state-court judgment.

Caldwell, 701 F. Supp. 2d at 348. Similarly, here, Plaintiff's filing of a complaint in district court—while her state court appeal was pending—would have potentially given a losing Plaintiff a second bite of the proverbial apple and could have resulted in rulings by this Court that undermined the Family Court judgment and appeal. The fact that the Appellate Division ultimately affirmed the Family Court judgment is more proof of this concern and lends support for treating Plaintiff's state court judgment as final. Accordingly, although Plaintiff was appealing her state

court judgment at the time she filed this Complaint, the Court considers her state court judgment as final for Rooker-Feldman purposes.

### 4. Plaintiff Invites This Court To Review And Reject State Court Judgments

Plaintiff challenges the Report and Recommendation's finding that the "conduct of which Plaintiff complains in this matter is inextricably intertwined with Judge McGrogan's custody determination . . . ." See Report and Recommendation at 7-8. She contends that the fourth Rooker-Feldman factor is not met because she is not inviting review of the state court judgment. See Obj. 16-21. The Report and Recommendation analyzed the second and fourth Rooker-Feldman factors together. Id. Although this Court has already discussed the second factor, above, the Court's analysis of the fourth factor is similar.

Under Third Circuit law, "[s]tate and federal claims are inextricably intertwined (1) when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered [or] (2) when the federal court must . . . take action that would render [the state court's] judgment ineffectual." ITT Corp. v. Intelnet Intern., 366 F.3d 205, 211 (3d Cir. 2004). Here, Plaintiff alleges in Counts I and II that her (and her child's) Fourteenth and First Amendment rights were violated by the removal of the child from her custody. The relief she seeks would require a determination that Judge McGrogan's judgment was erroneously entered (because her child should not have been removed from her custody) and would render Judge McGrogan's judgment ineffectual (by returning her child to her custody).

Similarly, Plaintiff's allegations of malpractice and fraud in Count III are based on conduct that Judge McGrogan considered or actions that were subsequently taken to enforce the state court judgment. Although Plaintiff distinguishes the case law cited by the Report and Recommendation, see Obj. at 11 (distinguishing McKnight v. Baker, 244 Fed. App'x 442, 444-45 (3d Cir. 2010) on

the basis that Plaintiff's Complaint "asserts that the judgment was procured by fraud, which constitutes an independent claim")), the Complaint's allegations of fraud are inextricably intertwined with the state court judgment. See also Kwiatkowski v. De Francesco, No. CIV. 01-6145 (GEB), 2006 WL 2347831, at *5 (D.N.J. Aug. 11, 2006) (noting that although "[p]laintiff asserts federal constitutional violations under §§ 1983 and 1988, including procedural due process, equal protection, right to privacy and right to life, liberty and the pursuit of happiness . . . each of these claims [is] a direct result of the actions taken by DYFS and the state courts. Therefore, each of these claims [is] so inextricably intertwined with the state court proceedings that federal review is precluded as it would be tantamount to appellate review of state court determinations."). To determine that Judge McGrogan should not have relied on the medical professionals' testimony, opinions, and findings, would indeed invite review by this Court of the state court judgment.

As demonstrated, all four Rooker-Feldman factors are satisfied with respect to Counts I, II, and III of the Complaint. Thus, Plaintiff's Complaint is dismissed for lack of subject matter jurisdiction on Rooker-Feldman grounds.

### C. Dismissal Of Plaintiff's Complaint On Younger Abstention Grounds

The Report and Recommendation noted that, even if the third Rooker-Feldman factor had not been met—on the basis of Plaintiff's pending state court appeal at the time her Complaint was filed in this action—the Court should still abstain from hearing Plaintiff's case pursuant to the Younger abstention doctrine. See Report and Recommendation at 8 n.4. Plaintiff challenges this conclusion, positing that, as a judicially created doctrine, the Younger abstention doctrine cannot serve as a bar to her constitutionally-protected rights. See Obj. at 14-15. Younger abstention is appropriate where "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate

opportunity to raise the federal claims." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir. 2005).

In Addiction Specialists, Inc. v. Twp. of Hampton, the Third Circuit found that Younger abstention was inappropriate where certain "constitutional and civil rights challenges to land use statutes and ordinances" could not be raised in the ongoing state proceeding, which involved a land use appeal from a township's zoning decision. Id. Thus, while Plaintiff is correct that Younger abstention cannot be used to prevent a federal district court from analyzing constitutional claims that cannot be fully addressed by a state proceeding, this is not such a case. Rather, in a case more analogous to Plaintiff's, McDaniels v. New Jersey Div. of Youth & Family Servs., 144 Fed. App'x 213 (3d Cir. 2005), the Third Circuit affirmed the district court's decision to abstain from deciding a case on the basis of Younger abstention, where the complaint dealt with the termination of plaintiffs' parental rights.

In McDaniels, the Third Circuit found that the first Younger factor was met, because the state proceeding against the plaintiffs—an action to terminate their parental rights—was judicial in nature. Id. at 213-215. With regard to the second and third factors, the Third Circuit specifically noted:

> New Jersey has a substantial interest in fair administration of child custody and parental rights proceedings. See Moore v. Sims, 442 U.S. 415, 427, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (recognizing this interest). Finally, it is clear that, had he elected to participate, McDaniels would have had an opportunity to raise his federal constitutional claims in the state judicial proceedings. See Maisonet v. Dep't of Human Serv., Div. of Family Dev., 140 N.J. 214, 657 A.2d 1209, 1212–1213 (1995) . . . Finally, had [Gonzalez] availed herself of the state proceedings available to her, those proceedings would have presented her with the opportunity to pursue her federal constitutional claims. See *216 Maisonet, 657 A.2d at 1212–1213. Younger Abstention was therefore proper."

Id. Similarly, here, Plaintiff's challenges as to the credibility and bias of the medical professionals could have been raised in her appeal from the state court judgment, and the Appellate Division

could have adequately considered those challenges. Indeed, Younger requires only "an opportunity to present federal claims in a state proceeding[,]" and it is the plaintiff's burden to show that state procedural law barred the presentation of these claims. Lazaridis v. Wehmer, 591 F.3d 666, 670-71 (3d Cir. 2010) (quoting Juidice v. Vail, 430 U.S. 327, 337 (1977). To the extent that Plaintiff raises a violation of her First Amendment rights due to the termination of her parental rights and custody over her child, those claims could have been adjudicated in state court. See McDaniels, 144 Fed. App'x at 213-15.

Additionally, Plaintiff's other challenges to the state court judgment, though couched as violations of her constitutional rights, fall squarely within the purview of the Family Court. As discussed in McDaniels, the Third Circuit has held that custody proceedings implicate important state interests, and federal district courts should not interfere with the decisions of state family courts. See, e.g., Johnson v. City of New York, 347 Fed. Appx. 850, 852 (3d Cir. 2009) (noting district court may not interfere with family court decisions); McKnight v. Baker, 244 Fed. App'x 442, 444-45 (3d Cir. 2007) (finding district court does not have jurisdiction to conclude that family court erred in its visitation rights determination); McAllister v. Allegheny Cty. Family Div., 128 Fed. App'x 901, 902 (3d Cir. 2005) (finding district court may not overturn family court adjudication of child-custody dispute).

Thus, even if the Rooker-Feldman doctrine did not apply to preclude the Court from exercising subject matter jurisdiction, the Court would abstain from hearing the claims under the Younger abstention doctrine. Accordingly, even if Plaintiff's state proceedings were ongoing—thus making Rooker-Feldman inapplicable—her state proceedings implicated very important state interests, and the state proceedings did afford Plaintiff an adequate opportunity to raise the federal

claims. For these additional reasons, the Court agrees with the Report and Recommendation's conclusions.

## V. <u>CONCLUSION</u>

Having thoroughly reviewed Magistrate Judge Clark's Report and Recommendation and Plaintiff's Objections, this Court adopts the Report and Recommendation. Accordingly, Plaintiff's Complaint is dismissed without prejudice for lack of subject matter jurisdiction.

To the extent the deficiencies in Plaintiff's Complaint can be cured by way of amendment, Plaintiff is granted thirty (30) days to file an Amended Complaint solely for purposes of amending the dismissed claims.

An appropriate Order accompanies this Opinion.

Dated: _____June 9_____, 2016

                                                     CLAIRE C. CECCHI, U.S.D.J.